CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* SLEIBI.

[Cite as *Cleveland Metro. Bar Assn. v. Sleibi,*
144 Ohio St.3d 257, 2015-Ohio-2724.]

(No. 2014–1394—Submitted February 4, 2015—Decided July 7, 2015.)

O'NEILL, J.

{¶ 1} Respondent, Jalal Tamer Sleibi of Lakewood, Ohio, Attorney Registration No. 0076633, was admitted to the practice of law in Ohio in 2003.

{¶ 2} On September 11, 2013, a probable-cause panel of the Board of Commissioners on Grievances and Discipline[1] certified to the board a complaint filed against Sleibi by relator, Cleveland Metropolitan Bar Association. In that complaint, relator alleged that Sleibi had violated Prof.Cond.R. 1.8(j) and 8.4(h) by engaging in sexual activity with four of his clients. The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors. They did not agree on a sanction.

{¶ 3} A panel of the board considered the parties' stipulated facts and held a hearing on May 28 and 29, 2014. The panel found that Sleibi had engaged in sexual activity with four of his clients in violation of Prof.Cond.R. 1.8(j). The panel also found that Sleibi violated Prof.Cond.R. 8.4(h) by engaging in sexual activity with four of his clients and sending sexually explicit, lewd messages to at least three of them. The panel recommended that Sleibi be suspended from the practice of law for two years, with one year stayed on conditions. The board considered this matter on August 8, 2014, and adopted the panel's report in its entirety. Relator filed objections, seeking a sanction of indefinite suspension.

{¶ 4} We adopt the board's findings of fact and misconduct, however, we conclude that a two-year suspension with six months stayed on conditions is the appropriate sanction in this case.

---

1. Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

**Misconduct**

{¶ 5} Sleibi began his solo law practice in 2005 and has offices in Lakewood and South Euclid. He practices in the areas of consumer bankruptcy and criminal defense, including traffic and OMVI cases.

*Client No. 1 (H.W.)*

{¶ 6} In February 2008, Sleibi began representing H.W., who was facing traffic, OMVI, and drug and alcohol charges. Sleibi stipulated that he knew H.W. was only 18 years old at the time. Sleibi stated that the relationship became sexual almost immediately, beginning in February 2008 and ending between April and June 2008. H.W. testified, and Sleibi admitted, that he sent her as many as 2,000 text messages during that time; Sleibi admitted that many were sexually explicit. H.W. testified that she believed that Sleibi was divorced or in the process of getting a divorce. She also believed that she was in a romantic relationship with Sleibi and believed him when he told her he loved her. She testified that Sleibi continued to contact her after she asked him to stop. As a result of Sleibi's persistence, she changed her phone number and e-mail address. H.W. testified that she believes Sleibi exploited the attorney-client relationship and that the affair took an emotional toll on her. Sleibi testified that it did not occur to him at the time that he was taking advantage of H.W. He further testified that he ended the relationship with H.W. because he knew it was wrong and he knew he was not going to leave his wife. Sleibi disclosed his relationship with H.W. to relator during its investigation.

*Client No. 2 (P.A.)*

{¶ 7} In March 2010, Sleibi represented P.A. in bankruptcy proceedings. Sleibi admitted that he engaged in sexual activity with P.A. during the course of the representation. P.A. did not appear or testify before the panel. Sleibi disclosed his relationship with P.A. to relator during its investigation.

*Client No. 3 (S.M.)*

{¶ 8} In July 2010, S.M. and her husband hired Sleibi to represent them in bankruptcy proceedings. Sleibi sent S.M. sexually explicit text messages. He also engaged in sexual activity with S.M. multiple times from November 2010 until February 2011. At the panel hearing, S.M. testified that in January 2011 she discovered she was pregnant and that when Sleibi learned this, he bombarded her with text messages and phone calls urging her to have an abortion. S.M. testified that Sleibi ended their relationship, telling her he had entered into therapy for sex addiction and wanted to work things out with his wife. S.M. claimed that the experience with Sleibi ruined her life, that her husband had a nervous breakdown, and that her children suffered greatly. She also claimed

that her own mental state suffered. S.M. and her husband filed grievances against Sleibi in February 2012.

*Client No. 4 (L.F.)*

{¶ 9} In 2010, L.F. hired Sleibi to represent her in bankruptcy proceedings. L.F. testified that at her first meeting with Sleibi, he asked her if she wanted a boyfriend and asked if he could keep pictures of her. Sleibi also sent L.F. sexually explicit text messages. L.F. claimed that Sleibi raped her in December 2010 and that he told her to keep the incident between the two of them or else "the bankruptcy wouldn't go through." Although this claim was investigated by law enforcement, Sleibi was not charged with any criminal violations arising from his sexual encounter with L.F. in December 2010. Sleibi testified that the encounter was consensual and that it did not occur to him that he was taking advantage of L.F. by engaging in sexual activity with her.

{¶ 10} L.F. filed a grievance against Sleibi with relator. Sleibi then sought therapy and contacted the Ohio Lawyers Assistance Program ("OLAP"). He was diagnosed with anxiety and depression and was put on medication that he continues to take. Sleibi's therapist believes that Sleibi turned to sex to self-medicate his chronic anxiety and depression. Sleibi signed a three-year contract with OLAP in March 2011, and when the contract term expired, Sleibi voluntarily requested an extension of the contract. Sleibi reports to his OLAP sponsor on a weekly basis. He continues to attend personal counseling on a monthly basis, and he regularly attends Sex and Love Addicts Anonymous ("SLAA") meetings.

## Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Disciplinary Counsel v. Bunstine,* 136 Ohio St.3d 276, 2013-Ohio-3681, 995 N.E.2d 184, ¶ 27. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc. Reg. 10(B).[2] *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

*Ethical Duties Violated*

{¶ 12} Prof.Cond.R. 1.8(j) provides that a lawyer shall not solicit or engage in sexual activity with a client unless a consensual sexual relationship already existed between them when the client-lawyer relationship commenced. "The client's reliance on the ability of her counsel in a crisis situation has the effect of putting the lawyer in a position of dominance and the client in a position of

---

2. Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

dependence and vulnerability." *Disciplinary Counsel v. Booher*, 75 Ohio St.3d 509, 510, 664 N.E.2d 522 (1996). And this court has placed the burden squarely on the lawyer to ensure that all attorney-client relationships remain on a professional level. *Id.* ("the obligation [is] on the attorney not to exploit the situation for his own advantage").

{¶ 13} The parties stipulated that Sleibi engaged in sexual activity with four of his clients and that a sexual relationship did not exist with any of the four clients when the attorney-client relationship began. The panel and the board found by clear and convincing evidence that Sleibi had engaged in sexual activity with four clients in violation of Prof.Cond.R. 1.8(j). We agree that Sleibi has committed multiple violations of Prof.Cond.R. 1.8(j).

{¶ 14} Prof.Cond.R. 8.4(h) prohibits a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law. The conduct giving rise to the rule violation must be so egregious as to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law. *Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21. In *Bricker*, a lawyer left earned fees in his client trust account and then paid expenses directly from that account instead of issuing checks to himself first. *Id.* at ¶ 24. Because there was no evidence that he used client funds to pay his obligations, this court did not find a separate violation of Prof.Cond.R. 8.4(h). *Id.*

{¶ 15} Here, in addition to finding that Sleibi had caused emotional harm to three of the four clients in this case, the panel and the board concluded that engaging in sexual activity with four separate clients and sending sexually explicit and lewd messages to at least three of those clients constituted egregious unprofessional conduct in violation of the rule. The parties stipulated that Sleibi's conduct adversely reflected on his fitness to practice law. We agree that Sleibi's egregious conduct constitutes a violation of Prof.Cond.R. 8.4(h).

*Sanctions in Similar Cases*

{¶ 16} "A lawyer's sexual involvement with a client has warranted a range of disciplinary measures depending on the relative impropriety of the situation * * *." *Cleveland Bar Assn. v. Kodish*, 110 Ohio St.3d 162, 2006-Ohio-4090, 852 N.E.2d 160, ¶ 66. In *Disciplinary Counsel v. Moore*, 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423, the respondent had an extramarital affair with a client he was representing in a family-law matter. *Id.* at ¶ 7. Moore also made repeated and unwanted sexually explicit remarks to a second client he was appointed to represent in a criminal-law matter. *Id.* at ¶ 2–5. For this conduct, we imposed a one-year suspension, all stayed on condition that the respondent continue mental-health treatment, allow the mental-health professional to report to OLAP, and refuse appointments to defend female clients until approved by his

treating mental-health professional. *Id.* We also imposed two years of probation. *Id.* at ¶ 20.

{¶ 17} In *Booher,* 75 Ohio St.3d at 509, 664 N.E.2d 522, the respondent engaged in sexual activity with a criminal client that he had been appointed to represent. The conduct occurred during a meeting in a jail to discuss possible prison terms. The lawyer stipulated to the misconduct. The panel recommended a public reprimand, and the board recommended a one-year stayed suspension. However, due to the vulnerability of the client and because of the respondent's misuse of his role as an officer of the court, we imposed an unstayed suspension of one year.

{¶ 18} In *Disciplinary Counsel v. Sturgeon,* 111 Ohio St.3d 285, 2006-Ohio-5708, 855 N.E.2d 1221, the respondent bartered sexual activity with a family-law client in exchange for legal services, touched another client in an unwanted manner and solicited sex in exchange for a reduced legal fee, and exposed himself after soliciting oral sex from a third client. *Id.* During the disciplinary proceedings, the respondent lied repeatedly while under oath, was disruptive to the disciplinary process, and blamed his clients for his misconduct. *Id.* at ¶ 27. For this conduct, we permanently disbarred the respondent. *Id.* at ¶ 30.

{¶ 19} In *Disciplinary Counsel v. Detweiler,* 135 Ohio St.3d 447, 2013-Ohio-1747, 989 N.E.2d 41, the respondent repeatedly made unwanted sexual advances to a divorce client. When the client ignored his advances, he sent her a nude photograph of himself in a state of sexual arousal. For this conduct, because of the disturbing escalation of the improper and unwanted conduct, we imposed a one-year, unstayed suspension. *Id.* at ¶ 20.

*Aggravating and Mitigating Factors*

{¶ 20} Aggravating and mitigating factors may be considered in favor of a more or less severe sanction. *Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, at ¶ 21. At the conclusion of the hearing before the panel, the parties stipulated to four aggravating factors. First, Sleibi acted with a dishonest or selfish motive. *See* BCGD Proc.Reg. 10(B)(1)(b). Second, Sleibi engaged in a pattern of misconduct. *See* BCGD Proc.Reg. 10(B)(1)(c). Third, Sleibi engaged in multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(d). And fourth, Sleibi's conduct harmed vulnerable clients. *See* BCGD Proc.Reg. 10(B)(1)(h). We agree that these are aggravating factors in this case.

{¶ 21} The parties stipulated to two mitigating factors. First, Sleibi has no prior disciplinary record. *See* BCGD Proc.Reg. 10(B)(2)(a). And second, Sleibi has exhibited a cooperative attitude toward this disciplinary proceeding. *See* BCGD Proc.Reg. 10(B)(2)(d). We agree that these are mitigating factors.

{¶ 22} The panel and the board found additional mitigating factors, and we agree in part. First, the panel and the board found that Sleibi made a full and free disclosure of his misconduct by volunteering the names of two clients with whom he had engaged in sexual activity, even though they had not filed grievances. BCGD Proc.Reg. 10(B)(2)(d) provides that "full and free disclosure to [the] disciplinary Board or [a] cooperative attitude toward [the] proceedings" may be considered a mitigating factor. As stated above, we agree that Sleibi's cooperative attitude and disclosure constitute a mitigating factor, but we decline to accord additional mitigating effect because we previously found that Sleibi had a cooperative attitude. Second, the panel and board found that Sleibi presented evidence of a good character and reputation aside from the charged misconduct. *See* BCGD Proc.Reg. 10(B)(2)(e). In addition to favorable character testimony from a fellow attorney and from Sleibi's 12–step program sponsor, Sleibi submitted dozens of positive character letters from clients and fellow attorneys. Based on these submissions and the recommendation of the panel and board, we agree that the additional mitigating factor of character and reputation applies in this case.

{¶ 23} Third, both the panel and board reports state, "Respondent has expressed remorse for his conduct to [his therapist], to his SLAA sponsor, to his other character witness [sic], and during his hearing testimony. Respondent in no way appears to blame the victims for his own misconduct." We are not convinced. Sleibi asserts that despite the fact that his actions were unethical and wrong, his actions were at all times consensual. This assertion ignores the plain language of the rule that Sleibi admits he violated as well as this court's finding in *Booher* that the attorney-client relationship is inherently unequal. Consensual sex with a client is precisely what is prohibited under the rule. Sleibi's insistence that the sex was consensual gives the impression that he does not comprehend the wrongfulness of his conduct. It also bears repeating that one of Sleibi's clients in this case filed rape charges against him. The assertion that all of the sexual activity was consensual speaks only to whether or not Sleibi should be incarcerated. Sleibi's lack of criminal culpability adds little to the question of remorsefulness for his admitted unethical conduct.

{¶ 24} More specifically on the issue of remorsefulness, we also note that Sleibi has not apologized to his clients. He testified that he has not made apologies directly to his clients for reasons related to his 12–step program. While we respect Sleibi's adherence to his 12–step program, the hearing transcript contains examples of Sleibi's attempts to discredit and embarrass the clients who filed grievances against him. We find that asserting unflattering information about the clients he had already stipulated to having harmed is inconsistent with Sleibi's assertions of remorsefulness for his conduct. Accordingly, we do not find Sleibi's

expressions of remorse sufficient to necessitate a less severe sanction than we would otherwise impose in this case.

{¶ 25} Finally, the panel and the board found as a mitigating factor that Sleibi has a mental disability. *See* BCGD Proc.Reg. 10(B)(2)(g). Relator argues that the board should not have admitted the testimony of licensed independent social worker Candace Risen, Sleibi's treating mental-health professional, because she had diagnosed Sleibi with "sex addiction" and sex addiction is not a recognized mental-health disorder under the DSM–IV or the DSM–5. This court has considered cases in which attorneys have claimed to be suffering from sex addiction and has rejected it as a mitigating factor in those cases for other reasons but not because sex addiction is or is not a recognized condition. *See Dayton Bar Assn. v. Ballato,* 143 Ohio St.3d 76, 2014-Ohio-5063, 34 N.E.3d 858, ¶ 13, 17 (rejecting claims of depression and hypersexual disorder because the respondent had not achieved a sufficient sustained period of successful treatment); *Columbus Bar Assn. v. Linnen,* 111 Ohio St.3d 507, 2006-Ohio-5480, 857 N.E.2d 539, ¶ 13, 16, 22 (rejecting sex addiction as a mitigating factor primarily due to suspicion that the respondent was feigning mental disability). In *Disciplinary Counsel v. Goldblatt,* 118 Ohio St.3d 310, 2008-Ohio-2458, 888 N.E.2d 1091, ¶ 23, 26, the respondent described himself as a sex addict, but his mental-health professional eschewed the term and characterized respondent as someone who had lost control of his sexual behavior. The court accepted as a mitigating factor that the respondent in *Goldblatt* was in therapy and had made progress. *Id.* at ¶ 26.

{¶ 26} We agree with relator that sex addiction is not a recognized mental-health disorder under the DSM–IV or the DSM–5 and thus is not a diagnosable condition for purposes of meeting the criteria set forth in BCGD Proc.Reg. 10(B)(2)(g). Despite our agreement with relator on this matter, we agree with the panel and board that Risen's testimony regarding Sleibi's anxiety and depression, which led him to act out sexually, is sufficient on its own to support a finding that Sleibi suffers from a mental-health disability.

{¶ 27} Relator argues that this finding is improper because the doctor who diagnosed Sleibi with anxiety and depression for purposes of prescribing him medication did not testify at Sleibi's hearing. We reject this argument. Risen, Sleibi's treating mental-health professional, did testify at the hearing. Risen is part owner of the Center for Marital and Sexual Health. She served Sleibi in two capacities: as his individual therapist and as the coordinator of his treatment plan. Risen testified before the panel that at her first meeting with Sleibi in March 2011, she observed that he was significantly depressed and anxious, and as a result, she referred him to Dr. Pallas for a medication consult. Dr. Pallas

prescribed Prozac for depression and anxiety, and Risen addressed those conditions in her therapy sessions with Sleibi.

{¶ 28} Risen's testimony establishes that Sleibi has been diagnosed with the mental disabilities anxiety and depression, that they contributed to his misconduct, that he has undergone a sustained period of successful treatment, and that under specified conditions, Sleibi will ultimately be able to return to the competent and ethical practice of law. We agree that Sleibi's mental disability constitutes a mitigating factor under BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv).

{¶ 29} Relator seeks a sanction of indefinite suspension. Sleibi argues for a one-year suspension, all stayed, based on the conditions that he remain compliant with his OLAP contract and commit no further misconduct. The panel and the board recommend that Sleibi be suspended from the practice of law for two years, with one year stayed on the following conditions: (1) that Sleibi continue to comply with his treatment plan as specified by his therapist or a similar professional counselor approved by OLAP, (2) that he fully comply with his current OLAP contract and, upon its expiration, execute a new contract if recommended by his therapist or OLAP, (3) that he attend six hours of tutorial or continuing education that addresses ethical-boundary dilemmas for professionals as recommended or approved by his therapist, and (4) that he commit no further misconduct. In addition, the panel and board recommend that Sleibi serve a probation period for the duration of the stayed suspension and for two years after.

{¶ 30} This court has repeatedly held that the purpose of the sanction imposed in disciplinary cases is not to punish the offender but to protect the public. *See, e.g., Disciplinary Counsel v. Edwards,* 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 19, citing *Disciplinary Counsel v. O'Neill,* 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. The panel and the board believe, based on the testimony of Sleibi and his therapist, that further unethical conduct by Sleibi is unlikely. That confidence notwithstanding, we believe a suspension with a lengthier unstayed portion than the one year recommended by the board is warranted in this case. We are concerned that Sleibi committed this misconduct with four clients who were vulnerable. Sleibi was blind to the harm he was causing his clients. He abused his roles as counselor and advocate to gratify his own sexual desires. It is egregious that these four clients were subjected to this treatment only because they needed legal representation in bankruptcy and criminal matters. We feel that the public can only benefit from this court's demonstrated commitment to professionalism and to requiring that lawyers consistently put the needs of their clients before their own.

*Conclusion*

{¶ 31} After considering the facts, the stipulations of the parties, the ethical duties violated, sanctions in similar cases, the aggravating and mitigating factors,

and the sanctions recommended by the panel and the board, we suspend Sleibi from the practice of law for two years, with six months stayed on the following conditions: (1) that Sleibi continue to comply with his treatment plan as specified by his therapist or a similar professional counselor approved by OLAP, (2) that he fully comply with his current OLAP contract and, upon its expiration, execute a new contract if recommended by his therapist or OLAP, (3) that he attend six hours of tutorial or continuing education that addresses ethical-boundary dilemmas for professionals as recommended or approved by his therapist, and (4) that he commit no further misconduct. In addition, Sleibi shall serve a probationary period pursuant to Gov.Bar R. V(21) for the period of the stayed suspension and for two years after. Costs are taxed to Sleibi.

Judgment accordingly.

PFEIFER, O'DONNELL, and KENNEDY, JJ., concur.

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., would indefinitely suspend the respondent from the practice of law in Ohio.

———————

McDonald Hopkins, L.L.C., R. Jeffrey Pollock, and Jennifer D. Armstrong, for relator.

Koblentz & Penvose, L.L.C., Richard Koblentz, and Bryan L. Penvose, for respondent.