[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Benbow,* Slip Opinion No. 2018-Ohio-2705.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2705

DISCIPLINARY COUNSEL *v.* BENBOW.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Benbow,* Slip Opinion No. 2018-Ohio-2705.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension, with second year stayed on conditions.*

(No. 2017-1734—Submitted January 24, 2018—Decided July 12, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-020.

_____

**Per Curiam.**

{¶ 1} Respondent, Brian William Benbow, of Zanesville, Ohio, Attorney Registration No. 0071404, was admitted to the practice of law in Ohio in 1999.

{¶ 2} In a complaint certified to the Board of Professional Conduct on April 6, 2017, relator, disciplinary counsel, alleged that Benbow violated multiple professional-conduct rules by engaging in sexual activity with a client in a

courthouse conference room and repeatedly lying about that conduct during the ensuing disciplinary investigation. The parties submitted joint stipulations in which Benbow admitted to most of the charged misconduct. They agreed that multiple aggravating and mitigating factors are present and jointly recommended that Benbow be suspended from the practice of law for two years, with the second year stayed on conditions.

{¶ 3} After conducting a hearing, a panel of the board issued a report in which it found that Benbow committed all of the stipulated misconduct and recommended that we adopt the parties' stipulated sanction. The board adopted the panel's report in its entirety. We adopt the board's findings and suspend Benbow from the practice of law for two years, with the second year stayed on conditions.

**Misconduct**

{¶ 4} K.V. retained Benbow in May 2014 to represent her in a child-visitation proceeding that was pending in the Coshocton County Court of Common Pleas, Probate and Juvenile Division. On August 18, 2014, Benbow filed a written closing argument on K.V.'s behalf, and the magistrate issued a decision the following day. Benbow's representation of K.V. was complete on September 8, 2014, when the judge adopted the magistrate's decision.

{¶ 5} Before the judge issued the final decision in K.V.'s case, however, Benbow and K.V. developed a personal relationship. They exchanged texts and Facebook messages of a sexual nature along with explicit photographs of themselves—though they had agreed in advance that they would delete any such communications immediately after receiving them. Despite their agreement, a total of seven digital photographs of K.V. were saved to Benbow's computer on September 23 and 24, 2014. Benbow also admitted that he had had at least one lunch date with K.V., during which he kissed her and touched her breast.

{¶ 6} The father of K.V.'s child filed a motion to modify the court's previous visitation orders on September 23, 2014, and K.V. once again retained

2

Benbow to represent her. Benbow subsequently kissed K.V. during a meeting at his office, but she stopped him and insisted that they prepare for her case.

{¶ 7} After attending a December 18, 2014 hearing, Benbow and K.V. entered a courthouse conference room to wait for the magistrate to complete the final orders. The conference room was equipped with a video camera that transmitted a live feed that was monitored by courthouse deputies. The video shows—and Benbow now stipulates—that he was initially seated across from K.V. but that he later moved to a chair next to her and placed his file and winter coat over his lap. Together, they placed K.V.'s hand under Benbow's coat and onto his lap, and for the next eight minutes she fondled him and rubbed his penis through his clothing. The fondling ceased when Benbow answered a telephone call, during which the courthouse deputies delivered the magistrate's orders. Benbow and K.V. then left the courthouse together, hugged, and went their separate ways. Their conduct in the conference room was referred to the Coshocton County Sheriff's Office.

{¶ 8} The sheriff's office interviewed K.V. on December 23, 2014, but after speaking with her brother (an attorney) during a break, she terminated the interview. After leaving the sheriff's office, she called and arranged to meet Benbow that evening. When she arrived, Benbow checked her phone and patted her down to ensure that she was not recording their conversation. K.V. confirmed that, pursuant to their agreement, she had deleted all of their digital photographs and communications as they occurred. Benbow advised her to retain separate counsel and then blocked all communication with her.

{¶ 9} Approximately one month later, Benbow, through his attorney, sent a letter to the Columbus Bar Association purporting to self-report the allegations against him. In that letter, however, Benbow not only affirmatively misrepresented the extent of his relationship with K.V. and the nature of their conduct in the conference room but also denied that he had engaged in any misconduct.

**{¶ 10}** Benbow was not forthcoming or cooperative when relator deposed him on September 15, 2016. While under oath, he omitted relevant information and affirmatively misrepresented facts regarding several issues, including the nature of his personal relationship with K.V., whether they had exchanged photographs of a sexual nature, and his role in the conduct caught on courthouse video. After reviewing the transcript of that deposition, Benbow submitted an errata sheet in which he purported to clarify his testimony—but that document also omitted relevant information and affirmatively misrepresented facts. Benbow's noncooperation continued at the panel hearing—the board characterized his testimony there as evasive and argumentative; even Benbow admitted that he was "struggling with denial."

**{¶ 11}** The board adopted the parties' stipulations that Benbow's conduct violated Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the client-lawyer relationship), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

**{¶ 12}** In addition, the board found that the scope and extent of Benbow's repeated and improper sexual conduct with his client and the subsequent course of dishonest conduct constituted "extremely troubling behavior by a lawyer" and were sufficiently egregious as to warrant a finding that he violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

**Sanction**

{¶ 13} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 14} The parties stipulated and the board found that the relevant aggravating factors here include Benbow's dishonest or selfish motive, lack of cooperation during the disciplinary process, and making false statements, submitting false evidence, or engaging in other deceptive practices during the disciplinary process. *See* Gov.Bar R. V(13)(B)(2), (5), and (6). The board also found that Benbow had engaged in a pattern of misconduct involving multiple offenses, acted for his own gratification, harmed a vulnerable client who was embroiled in a contentious custody dispute with someone Benbow described as a "dangerous individual," and harmed the profession by engaging in sexual activity in a courthouse, knowingly making false statements during relator's investigation, and lying under oath on multiple occasions in an effort to conceal his misconduct. *See* Gov.Bar R. V(13)(B)(3), (4), and (8). Further, the board suggested that Benbow failed to accept responsibility for his misconduct at his disciplinary hearing—though it did not expressly identify that failure as an aggravating factor.

{¶ 15} As mitigating factors, the parties stipulated and the board found that Benbow has no prior disciplinary record and had submitted approximately 40 letters attesting to his good character and reputation. *See* Gov.Bar R. V(13)(C)(1) and (5). Although Benbow presented evidence that he had sought assistance from the Ohio Lawyers Assistance Program ("OLAP"), the board noted that he did not do so until after relator filed his complaint. Indeed, Benbow has made no effort to establish that he suffered from a mitigating mental disorder, although he testified that he has been treated for anxiety and depression in the past and recently resumed counseling. *See* Gov.Bar R. V(13)(C)(7).

{¶ 16} In recommending that we impose the parties' agreed sanction of a two-year suspension with the second year stayed on conditions, the board considered two lines of cases—those involving repeated inappropriate sexual conduct with clients and those involving a course of dishonest conduct.

{¶ 17} In *Disciplinary Counsel v. Detweiler*, 135 Ohio St.3d 447, 2013-Ohio-1747, 989 N.E.2d 41, we imposed a one-year suspension on an attorney who made repeated unsolicited and unwelcome sexual advances toward a vulnerable client through text messages that culminated in his transmission of a nude photograph of himself in a state of sexual arousal. Unlike Benbow, Detweiler did not develop a physical relationship with his client or engage in false or deceptive conduct during the resulting disciplinary investigation.

{¶ 18} In *Cleveland Metro. Bar Assn. v. Lockshin*, 125 Ohio St.3d 529, 2010-Ohio-2207, 929 N.E.2d 1028, we indefinitely suspended an attorney who engaged in a pattern of inappropriate sexual communications with multiple clients, including a minor. Like Benbow, Lockshin avoided taking full responsibility for his inappropriate behaviors and gave false deposition testimony. But Lockshin's conduct was arguably more egregious than Benbow's because Lockshin engaged in inappropriate sexual communications with multiple clients. Moreover, Lockshin had significant mental-health problems, he withdrew from certain treatment against the advice of his treatment professionals, and his counselor testified that he would be "very apprehensive" about recommending that Lockshin be permitted to continue practicing law if he did not take his counseling seriously.

{¶ 19} We have held that an attorney who engages in a course of conduct that involves dishonesty, fraud, deceit, or misrepresentation must serve an actual suspension from the practice of law for an appropriate period of time. *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. In *Disciplinary Counsel v. Gildee*, 134 Ohio St.3d 374, 2012-Ohio-5641, 982 N.E.2d 704, we imposed a two-year suspension, with the second year stayed on conditions,

based on an attorney's failure to deliver funds that her client was entitled to receive, falsification of a document in an attempt to justify that failure, and false representation to the relator regarding the status of the payment. We also imposed that sanction on an attorney who engaged in seven incidents of shoplifting and attempted to mislead the relator by making false statements and omitting relevant information during the ensuing disciplinary investigation. *Cincinnati Bar Assn. v. Moore*, 143 Ohio St.3d 252, 2015-Ohio-2488, 36 N.E.3d 171.

{¶ 20} Because Benbow not only engaged in an inappropriate sexual relationship with a client but also engaged in a course of dishonest conduct involving multiple false denials and lies under oath, we agree that a two-year suspension, with the second year stayed on the conditions recommended by the board, is the appropriate sanction in this case.

{¶ 21} Accordingly, Brian William Benbow is suspended from the practice of law in Ohio for two years, with the second year stayed on the conditions that he engage in no further misconduct, remain in compliance with his September 27, 2017 OLAP contract and any extension thereto, and serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21). If Benbow fails to comply with a condition of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Benbow.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

DEGENARO, J., not participating.

_____

Scott J. Drexel, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Charles J. Kettlewell, L.L.C., and Charles J. Kettlewell, for respondent.

_____