**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Porter*, Slip Opinion No. 2021-Ohio-4352.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-4352

DISCIPLINARY COUNSEL *v*. PORTER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Porter*, Slip Opinion No. 2021-Ohio-4352.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including soliciting or engaging in sexual activity with a client with whom a consensual sexual relationship did not exist prior to the client-lawyer relationship—Two-year suspension with the second year stayed on conditions.*

(No. 2021-0754—Submitted September 8, 2021—Decided December 15, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-068.

_____

**Per Curiam.**

{¶ 1} Respondent, Sean Richard Porter, of Chagrin Falls, Ohio, Attorney Registration No. 0096622, was admitted to the practice of law in Ohio in 2017.

**{¶ 2}** In a November 2020 complaint, relator, disciplinary counsel, charged Porter with engaging in improper sexual relationships with two clients, making a false statement of fact to a tribunal by filing a fraudulently notarized affidavit, and knowingly making false statements of material fact in connection with the resulting disciplinary investigation.

**{¶ 3}** The parties entered into stipulations of fact and misconduct. After a hearing before a three-member panel of the Board of Professional Conduct, the board issued a report finding that Porter committed all of the charged misconduct and recommending that he be suspended from the practice of law for two years with the final year conditionally stayed and that we place additional conditions on his reinstatement. Porter objects to the board's recommended sanction, arguing that the board did not afford appropriate weight to the aggravating and mitigating factors present in this case and that the proposed sanction is inconsistent with our precedent. For the reasons that follow, we overrule Porter's objections and adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

*Count One*

**{¶ 4}** In December 2018, M.H. retained Porter, who was then employed by Barr, Jones & Associates, L.L.P. ("Barr Jones"), to represent her in her divorce. At that time, M.H. was a recovering alcoholic who was living and working at a California rehabilitation facility, from which she had recently graduated. Her three children were living in Ohio with their father. She had no prior relationship with Porter.

**{¶ 5}** Although M.H.'s divorce was contentious, it was finalized in May 2019 and Porter continued to represent M.H. in several postdecree matters. By July 2019, Porter and M.H. had begun to exchange inappropriate and sexually suggestive text messages.

{¶ 6} On July 12, Porter filed a motion for contempt against M.H.'s former spouse and included an affidavit that was purportedly signed by M.H. and notarized by Porter on July 11. Porter later admitted that he had signed M.H.'s name to the affidavit and notarized that signature, fraudulently attesting that he had personally observed M.H. sign the document, before filing it with the court.

{¶ 7} In August and September, M.H. twice flew to Ohio to attend postdecree hearings. After each hearing, Porter and M.H. had sexual intercourse in M.H.'s hotel room. As M.H. was returning to California at the conclusion of her September trip, Porter broke up with her.

{¶ 8} On October 15, M.H. informed Barr Jones of Porter's improper conduct. When confronted by the firm's partners, Porter initially denied the allegations. Later that day, he admitted that he had engaged in improper conduct with M.H. Following that discussion, Barr Jones partner Andrew D. Jones sent Porter an email confirming the firm's understanding that Porter would (1) have no further contact with M.H., (2) prepare a motion to withdraw from M.H.'s case, (3) write a check to the firm to reimburse M.H. for all the fees for her postdecree matters, and (4) self-report his ethical violations to the Office of Disciplinary Counsel and provide written confirmation of that report to the firm.

{¶ 9} On October 16, Porter notified relator of his misconduct with respect to M.H. He also issued to the firm a $4,000 check, which the firm refunded to M.H.

{¶ 10} The parties stipulated and the board found that Porter's conduct violated Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the client-lawyer relationship) and 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal).

*Count Two*

{¶ 11} A.H.'s spouse filed for divorce in July 2019, and the following month, A.H. was charged with domestic violence. She retained Porter to represent her in both proceedings and had no prior relationship with him.

{¶ 12} On October 3, A.H. invited Porter to dinner to celebrate a favorable ruling in her criminal case. Porter—who still was representing A.H. in both cases—accepted the invitation. After dinner, A.H. asked Porter whether he wanted to see a movie and they drove to the theater in separate cars. At the theater, Porter asked A.H. to get into his car, where they engaged in intimate physical contact. Porter suggested that they go to his nearby apartment, and A.H. agreed. There, they engaged in sex.

{¶ 13} Over the next two weeks, Porter and A.H. exchanged numerous text messages. On October 15—the day on which Porter's employer confronted him about his inappropriate relationship with M.H.—A.H. sent Porter a text message informing him that she had not been able to sleep for a few nights and that she "couldn't tell anybody" and asking whether she was a "horrible person now." Porter responded, "No not at all let's not tell anyone." And when A.H. asked what would happen if she got pregnant, Porter told her, "[You have] nothing to worry about but we will work together to hide it."

{¶ 14} The following day, Porter reported his misconduct with M.H. to relator but failed to mention that he had engaged in similar misconduct with A.H. Although Barr Jones was unaware of Porter's misconduct with A.H., the firm removed him from her case on October 30 based on his misconduct with M.H. After the firm terminated Porter's employment on December 6, he asked A.H. to help him get a job with her employer. A.H. recommended Porter for an entry-level position, but her employer did not hire him.

{¶ 15} Porter ended his relationship with A.H. in March 2020. On April 9, A.H. filed a grievance against him. In his response to that grievance, Porter

repeatedly and falsely stated that their inappropriate relationship did not begin until November 2019, after his employer had removed him from her case. He characterized A.H.'s grievance as frivolous and claimed that her reports that their relationship occurred during their attorney-client relationship were "fraudulent," that she had "mental issues" and an "evil motive," and that she was "clearly acting on emotions and anger" after he ended their relationship. At his disciplinary hearing, however, he admitted that his response to disciplinary counsel was a complete fabrication.

{¶ 16} The parties stipulated and the board found that Porter's conduct with respect to A.H. violated Prof.Cond.R. 1.8(j) and 8.1(a) (prohibiting a lawyer from making a false statement of material fact in connection with a disciplinary matter).

### Recommended Sanction

{¶ 17} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 18} As for aggravating factors, the board accepted the parties' stipulations that Porter had committed multiple offenses and submitted false evidence, made false statements, or engaged in other deceptive practices during the disciplinary process. *See* Gov.Bar R. V(13)(B)(4) and (6). The board also found that five additional aggravating factors were present—namely, that Porter had acted with a dishonest or selfish motive, engaged in a pattern of misconduct, failed to cooperate in the disciplinary proceeding, refused to acknowledge the wrongful nature of his conduct, and caused harm to vulnerable clients. *See* Gov.Bar R. V(13)(B)(2), (3), (5), (7), and (8).

{¶ 19} The parties stipulated and the board found that two mitigating factors were present—Porter has no prior discipline and had made a timely, good-faith effort to make restitution to M.H. *See* Gov.Bar R. V(13)(C)(1) and (3). The board

also considered but *rejected* Porter's claims that he had made full and free disclosure to the board, submitted evidence of his good character or reputation, and established the existence of a qualifying mental disorder. The board found that Porter's duplicity during relator's investigation overshadowed his eventual admission of wrongdoing and that his admissions were tainted by his refusal to acknowledge that he was solely responsible for his violations of Prof.Cond.R. 1.8(j).

{¶ 20} In determining its recommended sanction for Porter's misconduct, the board considered more than a dozen cases in which we imposed sanctions ranging from a public reprimand to disbarment for misconduct that involved sexual activity with a client. Because Porter took advantage of the attorney-client relationship and his client's vulnerable circumstances for his own sexual gratification *and* engaged in a course of conduct involving dishonesty, fraud, deceit, and misrepresentation, the board concluded that Porter's misconduct warranted an actual suspension from the practice of law. *See Disciplinary Counsel v. Sarver*, 155 Ohio St.3d 100, 2018-Ohio-4717, 119 N.E.3d 405, ¶ 22 (stating that an actual suspension is appropriate for attorneys who have taken advantage of the attorney-client relationship and their clients' vulnerable circumstances); *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 191, 658 N.E.2d 237 (1995) (holding that an attorney who engages in a course of conduct involving dishonesty, fraud, deceit, or misrepresentation will be actually suspended from the practice of law for an appropriate period of time).

{¶ 21} In determining the recommended length of the suspension, the board considered four cases in which we imposed two-year suspensions and conditionally stayed from as many as 18 months to as few as six months of those suspensions.

{¶ 22} In *Sarver*, an attorney engaged in a sexual relationship with an indigent client he had been appointed to defend against serious criminal charges and then denied his misconduct when confronted by the judge presiding over the

client's criminal case. Just two aggravating factors were present—Sarver had acted with a dishonest and selfish motive and committed multiple offenses. In mitigation, Sarver had no prior discipline and had made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings. He also had had criminal sanctions imposed for actions relating to his improper sexual relationship, submitted evidence of his good character and reputation, successfully completed court-ordered counseling, entered into a contract with the Ohio Lawyers Assistance Program ("OLAP"), and made a good-faith effort to address the issues underlying his misconduct. We suspended Sarver from the practice of law for two years with 18 months conditionally stayed.

{¶ 23} In *Akron Bar Assn. v. Williams*, 104 Ohio St.3d 317, 2004-Ohio-6588, 819 N.E.2d 677, an attorney had an inappropriate sexual relationship with a vulnerable client he was representing in criminal and domestic-relations cases. As aggravating factors, we found that Williams had preyed on his client by exploiting her emotional and financial weaknesses and steadfastly denied the sexual relationship under oath. In addition to having no prior discipline, Williams had eventually admitted his misconduct and apologized for his actions. We imposed the same sanction on Williams that we imposed on Sarver—a two-year suspension with 18 months conditionally stayed.

{¶ 24} Here, the board distinguished Porter's misconduct from Sarver's and Williams's on the grounds that Porter's misconduct involved *two* vulnerable clients and more egregious aggravating factors. Similar circumstances were present in *Cleveland Metro. Bar Assn. v. Sleibi*, 144 Ohio St.3d 257, 2015-Ohio-2724, 42 N.E.3d 699, in which we imposed a two-year suspension with six months conditionally stayed on an attorney who engaged in sexual activity with four clients. Like Porter, Sleibi had acted with a dishonest or selfish motive, engaged in a pattern of multiple offenses, and caused harm to vulnerable clients. But in addition to having no prior discipline, Sleibi had exhibited a cooperative attitude toward the

disciplinary proceedings and presented evidence of his good character and reputation. Although Sleibi had expressed some remorse for his misconduct, we declined to credit that remorse as a mitigating factor because he had not apologized to his clients and had made several attempts to discredit and embarrass them, as Porter did here.

{¶ 25} The board found that this case had aggravating factors similar to those in *Disciplinary Counsel v. Benbow*, 153 Ohio St.3d 350, 2018-Ohio-2705, 106 N.E.3d 57, but that it also involved *two* vulnerable victims. In *Benbow*, we imposed a two-year suspension with the second year conditionally stayed on an attorney who violated multiple professional-conduct rules by engaging in sexual activity with a single client and repeatedly lying about that conduct during the disciplinary investigation. Like Porter, Benbow had acted with a dishonest or selfish motive, engaged in a pattern of misconduct involving multiple offenses, failed to cooperate, and made false statements during the disciplinary process. In addition to having no prior discipline, Benbow had submitted approximately 40 letters attesting to his good character and reputation.

{¶ 26} Mindful of the fact that the primary purpose of the disciplinary process is to protect the public, the board recommends that we suspend Porter from the practice of law for two years with one year stayed on the conditions that he (1) schedule an OLAP evaluation within 60 days of our decision in this case, (2) comply with the requirements of Gov.Bar R. V(23)(A) governing the employment of a disqualified or suspended attorney by an attorney or law firm, (3) commit no further misconduct, and (4) pay the costs of this proceeding.

{¶ 27} In addition to the conditions for reinstatement set forth in Gov.Bar R. V(24), the board recommends that Porter be required to submit (1) proof that he has complied with all OLAP recommendations, (2) an opinion from a qualified healthcare professional that he is able to return to the competent, ethical, and professional practice of law, and (3) proof that he has completed six hours of

continuing legal education addressing ethical boundaries for professionals. The board further recommends that upon reinstatement to the profession, Porter be required to cooperate with a monitoring attorney who would be responsible for preapproving all professional relationships with prospective female clients, monitoring approved relationships, and reviewing all of Porter's communications with female clients.

### Porter's Objections to the Recommended Sanction

{¶ 28} In two objections, Porter challenges the board's rejection of several mitigating factors, including his diagnosed mental disorders, his self-report to relator and subsequent cooperation in the disciplinary proceedings, and his character references. Citing those purported mitigating factors and claiming that his misconduct is less egregious than the conduct at issue in the cases relied on by the board, Porter asserts that the appropriate sanction for his misconduct is a two-year suspension with 18 months conditionally stayed.

{¶ 29} Porter's contention that the board improperly failed to attribute mitigating effect to certain diagnosed mental disorders is without merit. In order to establish a mental disorder as a mitigating factor under Gov.Bar R. V(13)(C)(7), an attorney must establish that (1) a qualified healthcare professional has diagnosed the attorney with a disorder, (2) the disorder contributed to cause the misconduct, (3) the attorney has achieved a sustained period of successful treatment, and (4) a qualified healthcare professional has rendered a prognosis that the attorney will be able to return to the competent, ethical, and professional practice of law under specified conditions.

{¶ 30} In this case, it is undisputed that Tara LeMasters, a licensed professional clinical counselor, has diagnosed Porter with clinical depression, anxiety, and an adjustment disorder. In addition, LeMasters testified that based on her training, education, and experience, she had determined that those disorders contributed to cause his misconduct. She expressed her professional opinion that

with continued treatment, Porter would be able to return to the competent, ethical, and professional practice of law.

{¶ 31} But LeMasters also admitted that her first meeting with Porter occurred on April 12, 2021—just 16 days before his disciplinary hearing—and that he was in the early phase of his treatment, having completed just four 60- to 90-minute sessions. She recommended a three-year period of treatment beginning with biweekly sessions for six months to one year, backing down to bimonthly sessions for the remainder of the term, with monthly follow-up sessions thereafter.

{¶ 32} On these facts, it is evident that Porter has not achieved the sustained period of successful treatment that is necessary for a disorder to qualify as a mitigating factor. *See, e.g.*, *Disciplinary Counsel v. Karp*, 156 Ohio St.3d 218, 2018-Ohio-5212, 124 N.E.3d 819, ¶ 31-32 (finding that an attorney had not achieved a sustained period of successful treatment after five months of psychotherapy resulting in the remission of his depression for a little less than two months).

{¶ 33} In his objections, Porter asserts that obtaining mental healthcare during the COVID-19 pandemic "was nearly impossible, with the majority of the country on lockdown and health care severely curtailed for all but those with life-threatening conditions." At his disciplinary hearing, Porter testified that he had attempted to work through his problems on his own before seeking help. He gave no indication of how long he had waited to seek treatment after he learned of M.H.'s allegations against him in October 2019—five months before the COVID-19 shutdown. Although he testified that he eventually reached out to OLAP and LeMasters to find a preferred provider to conduct an assessment, the only suggestion in the record that the pandemic delayed those efforts was Porter's statement, "But I think because of COVID and that kind of stuff, it got kind of delayed." In fact, Porter offered no evidence tending to demonstrate what efforts he and/or OLAP undertook to find a treatment professional when he first contacted

OLAP or that OLAP had attributed any of the delay in his diagnosis and treatment to the pandemic. Nor did Porter request a continuance of his disciplinary hearing to permit him to establish a more sustained period of treatment. On these facts, we find that Porter's mental disorders are not a mitigating factor.

{¶ 34} Next, Porter contends that the board failed to properly consider that he fully cooperated in these disciplinary proceedings by self-reporting his relationship with M.H., making full restitution to her, and entering into stipulations of fact and misconduct. We disagree.

{¶ 35} While it is true that it was Porter who first brought his inappropriate relationship with M.H. to relator's attention, he hardly did so voluntarily. Indeed, the board found that Porter made that report only because his firm's partners had informed him that they would report his misconduct to disciplinary counsel if he did not do so himself. Moreover, Porter's initial report to relator actively concealed the fact that he had engaged—and continued to engage—in the same type of misconduct with A.H.

{¶ 36} In his response to A.H.'s grievance six months later, Porter attacked A.H.'s character and credibility as he repeatedly and falsely claimed that their personal relationship did not commence until *after* the attorney-client relationship had ended. Although Porter has since admitted that his response to that grievance was a complete fabrication, he continues to deny responsibility for his actions and claim that his misconduct was not as egregious as that of other attorneys sanctioned by this court, because, according to him, his inappropriate relationships with M.H. and A.H. were consensual and initiated by his clients.

{¶ 37} Prof.Cond.R. 1.8(j) prohibits a lawyer from engaging in consensual sex with a client unless that consensual sexual relationship predates the attorney-client relationship because "[t]he client's reliance on the ability of her counsel in a crisis situation has the effect of putting the lawyer in a position of dominance and the client in a position of dependence and vulnerability," *Disciplinary Counsel v.*

*Booher*, 75 Ohio St.3d 509, 510, 664 N.E.2d 522 (1996). Regardless of whether a client initiates or consents to sexual activity with the lawyer, it is the lawyer's duty to ensure that the attorney-client relationship remains on a professional level. *Id.* Despite this fact, Porter continues to attribute blame to his clients for his current predicament. We therefore agree with the board's assessment that "[Porter's] duplicity during the investigatory phase of the proceedings overshadowed the admissions of wrongdoing that he made during the hearing, and * * * those admissions were tainted by his refusal to acknowledge that his multiple violations of Prof.Cond.R. 1.8(j) were his sole responsibility."

{¶ 38} Porter's claim that the board inappropriately discounted his character evidence is likewise unavailing. As the board noted, two of the letters were from attorneys who had only witnessed Porter's work as a docket clerk in his father's office during his senior year of high school and undergraduate summer breaks. The remaining two letters were from law-school friends. None of the authors claimed to have had any professional contact with Porter after he was admitted to the bar, and none of them explained why they continued to hold him in such high regard despite the truth of the allegations lodged against him. Therefore, they could offer little, if any, insight into Porter's current character or reputation as an attorney.

{¶ 39} Porter's final argument is that his misconduct is not as egregious as that of the attorneys in the cases cited by the board. That argument rests largely on Porter's flawed claims that he is somehow less culpable for his misconduct because his clients purportedly initiated and willingly participated in the affairs. As we have already explained, regardless of whether Porter's clients initiated or consented to the sexual activity, it was Porter's duty alone to ensure that the attorney-client relationship remained on a professional level.

{¶ 40} Porter also seeks to distinguish his misconduct from that of Sarver, who was charged with two counts of sexual battery arising from his sexual

relationship with a single client (though the charges were dismissed as part of a plea agreement), *see Sarver*, 155 Ohio St.3d 100, 2018-Ohio-4717, 119 N.E.3d 405, at ¶ 8, and Sleibi, who was accused of (but never charged with) rape, *see Sleibi*, 144 Ohio St.3d 257, 2015-Ohio-2724, 42 N.E.3d 699, at ¶ 9.  He further contends that his conduct is not as egregious as that of Benbow, who on one occasion engaged in sexual conduct with his client inside a courthouse.  *See Benbow*, 153 Ohio St.3d 350, 2018-Ohio-2705, 106 N.E.3d 57.  While we acknowledge that there are some factual differences between Porter's misconduct and the misconduct at issue in each of those cases, we are nonetheless persuaded that the board struck the right balance with its recommended sanction given that Porter engaged in inappropriate sexual conduct with *two* vulnerable clients, engaged in repeated instances of dishonesty beginning with his false notarization of an affidavit and spanning all stages of the disciplinary process, and refused to acknowledge both the wrongful nature of his misconduct *and* the harm that he had caused to his clients.  We therefore overrule each of Porter's objections and adopt the board's recommended sanction.

**Conclusion**

{¶ 41} Accordingly, Sean Richard Porter is suspended from the practice of law for two years with the second year stayed on the conditions that he (1) contact OLAP to schedule a mental-health assessment within 60 days of the issuance of this order and, if OLAP determines that treatment is necessary, enter into an OLAP contract for a duration to be determined by OLAP and comply with all treatment recommendations, (2) comply with the requirements of Gov.Bar R. V(23)(A) during the term of his suspension, (3) commit no further misconduct, and (4) pay the costs of this proceeding.

{¶ 42} In addition to the conditions for reinstatement set forth in Gov.Bar R. V(24), Porter shall be required to submit (1) proof that he has complied with all OLAP recommendations, (2) an opinion from a qualified healthcare professional that he is able to return to the competent, ethical, and professional practice of law,

and (3) proof that he has completed six hours of continuing legal education, approved by relator and in addition to the requirements of Gov.Bar R. X, addressing ethical boundaries for professionals.

{¶ 43} Upon reinstatement to the practice of law, Porter shall be required to cooperate with a monitoring attorney appointed by relator for two years. The monitoring attorney, who may be a supervising attorney in a law firm that employs Porter, shall be responsible for preapproving all professional relationships with prospective female clients, monitoring approved relationships, and reviewing all written, electronic, and verbal communications with Porter's female clients. If Porter fails to comply with any condition of the stay, the stay will be lifted and he will serve the entire two-year suspension. Costs are taxed to Porter.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai, Assistant Disciplinary Counsel, for relator.

Reminger Co., L.P.A., and Holly Marie Wilson, for respondent.

_____