**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Disciplinary Counsel v. Noble*, **Slip Opinion No. 2022-Ohio-2190.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-2190

DISCIPLINARY COUNSEL *v*. NOBLE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Noble*, Slip Opinion No. 2022-Ohio-2190.]

*Attorneys—Misconduct—Multiple offenses—Violations of the Rules of Professional Conduct, namely, engaging in sexual activity with a client in the absence of a preexisting consensual sexual relationship, knowingly making a false statement in the course of representing a client, knowingly making a false statement of fact or law to a tribunal, engaging in conduct that adversely reflects on the lawyer's fitness to practice law, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—One-year suspension with six months conditionally stayed.*

(No. 2021-1519—Submitted January 25, 2022—Decided June 29, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2021-017.

_____

**Per Curiam.**

{¶ 1} Respondent, Michael Allen Noble, of Ravenna, Ohio, Attorney Registration No. 0088639, was admitted to the practice of law in Ohio in 2012.

{¶ 2} In a June 2021 complaint, relator, disciplinary counsel, alleged that Noble had committed five ethical violations by engaging in an inappropriate sexual relationship with a client and making false statements about his conduct to opposing counsel, a police chief, and a municipal court.

{¶ 3} The parties submitted stipulations of fact and misconduct and numerous stipulated exhibits. Noble testified before a three-member hearing panel of the Board of Professional Conduct. The panel and the board each issued a report finding that Noble had committed the charged misconduct and recommending that we suspend him from the practice of law for one year, with six months stayed on conditions. No objections have been filed. Based on our review of the record and our precedent, we adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

*Count I—Inappropriate Relationship with a Client*

{¶ 4} In September 2018, Jane Doe met with Noble to discuss the termination of her marriage, and she chose to have Noble represent her. Initially, Doe's meetings with Noble focused solely on her legal matter, but within a week or two, she and Noble began expressing feelings for each other. After three or four meetings, they commenced a sexual relationship that continued for almost two years.

{¶ 5} In November 2018, Doe's husband, D.P., retained counsel and informed him that Noble was having an affair with Doe. By December, Noble had filed a complaint for divorce on Doe's behalf. Shortly thereafter, D.P.'s counsel met with Noble and asked him if he was having a sexual relationship with Doe; Noble denied the relationship. D.P.'s counsel commented that if Noble was in a

sexual relationship with Doe, it would be a good time to withdraw from the case. Noble again denied his relationship with Doe.

{¶ 6} Noble later told Doe that he had lied to opposing counsel about their relationship and that she should obtain new counsel to represent her. In January 2019, Noble withdrew from Doe's divorce case and transferred her entire retainer to her new attorney. Doe's divorce became final in August 2019.

{¶ 7} Based on the foregoing, the parties stipulated and the board found that Noble's conduct violated Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the client-lawyer relationship) and 4.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact or law in the course of representing a client). We adopt these findings of misconduct.

*Count II—False Statements to a Law-Enforcement Officer and a Tribunal*

{¶ 8} In 2020, Noble was campaigning as a judicial candidate for a seat on the Portage County Court of Common Pleas while also attempting to reconcile with his ex-wife. He did not inform his ex-wife that he was still dating Doe, and he did not want his relationship with Doe to become public knowledge.

{¶ 9} In April 2020, D.P.—a police officer—confronted Noble in the parking lot outside Noble's office. By that time, Noble had been dating Doe for over 18 months. D.P. did not reveal his identity, and Noble claimed that he did not know who D.P. was—though D.P. repeatedly stated, "You know who I am." After about five minutes, both men drove away.

{¶ 10} In late May, Noble's ex-wife found a flirtatious text message from Doe on Noble's cell phone and confronted him about it. Noble denied having a physical relationship with Doe but told his ex-wife that Doe's ex-husband, D.P., was a police officer who had accused Noble of having an affair with Doe. Noble's ex-wife reached out to D.P., asked if he would be willing to share any information that he had about Noble and Doe, and arranged to meet him at a restaurant.

{¶ 11} The day before Noble's ex-wife was scheduled to meet D.P., she was in a pizzeria when a man approached her and said that he thought he knew her. When she questioned how he knew her, the man said that he knew her husband. When she returned home that night, she found a manila envelope in her mailbox. The envelope contained a handwritten letter purportedly written by Doe that detailed her affair with Noble, a picture of Noble and Doe seated at a reception table, and a picture of a man and woman engaging in sexual intercourse. She could not clearly see the faces of the man and woman in the latter picture.

{¶ 12} When Noble's ex-wife arrived at the restaurant to meet with D.P. the next day, she observed the same man from the pizzeria walk by her and sit at the bar. Shortly thereafter, D.P. entered the restaurant and had a cordial conversation with Noble's ex-wife for about an hour. He showed her a picture of Noble and Doe at a wedding reception and told her that they were still involved in a romantic relationship. D.P. recorded the conversation.

{¶ 13} After that meeting, Noble's ex-wife began to suspect a connection between D.P., the man from the pizzeria and the bar, and the envelope that had been left in her mailbox. She told Noble that if he was being truthful about his relationship with Doe, they needed to report D.P.'s behavior to the police because she felt that D.P. was harassing her. Noble once again denied his relationship with Doe.

{¶ 14} On June 5, 2020, Noble arranged a meeting with D.P. through his counsel. During that meeting, Noble claimed that he had a recording of D.P.'s meeting with Noble's ex-wife. Noble did not actually have a recording of the meeting between D.P. and Noble's ex-wife, but unbeknownst to Noble, D.P. had recorded the meeting. Noble attempted to use his purported recording as leverage and offered to "put an end" to the situation by having both men agree to have no further contact with the family of the other. When D.P. stated that he had done nothing wrong, Noble told him, "You admitted some things on that tape that I am

sure your superiors wouldn't be too happy about." The meeting ended without resolution.

{¶ 15} On June 7, Noble's ex-wife contacted the police department in the city where she lived and told an officer that she was fearful of D.P. coming to her home. On the officer's advice, she sent D.P. a text message asking him not to contact her again, and he complied with that request. Two days later, Noble and his ex-wife met with the chief of the police department where D.P. worked in a neighboring county. During that meeting, Noble told the police chief that D.P. had accused him of sleeping with D.P.'s ex-wife, Doe. Noble misrepresented the nature of his relationship with Doe, expressly denying that they had engaged in a physical relationship.

{¶ 16} At the conclusion of that meeting, Noble and his ex-wife both filed written personnel complaints against D.P. Noble's complaint related to the April 2020 encounter with D.P. in the parking lot of Noble's office. His ex-wife claimed that D.P. had insisted on meeting with her, that he had tried to probe her for information about Noble's past, and that he had attempted to make her believe that Noble was "involved in affairs [and] other illegal activities." She also included information about the envelope that had been left at her home and the man who had approached her at the pizzeria and later sat at the bar during her meeting with D.P. Based on those complaints, the police department commenced an internal investigation into D.P.'s conduct.

{¶ 17} D.P. appeared with his lawyer and a union representative for a formal investigatory interview. He denied having any connection to the envelope or the man from the pizzeria and the bar. He also gave the investigating officer the recordings of his parking-lot encounter with Noble, his meeting with Noble's ex-wife, and his meeting with his attorney and Noble. After a full investigation, D.P. was cleared of any wrongdoing.

**{¶ 18}** In July 2020, however, Noble and his ex-wife were charged with first-degree-misdemeanor counts of falsification and making false alarms for the complaints they had filed against D.P. The charges against Noble were eventually dismissed, and his ex-wife pleaded guilty to an amended charge of disorderly conduct, a minor misdemeanor.

**{¶ 19}** In December 2020, Noble petitioned to seal the record in his dismissed criminal case. The prosecutor objected, and the court set the matter for a hearing. When cross-examined at that hearing, Noble testified that he did not lie to the police chief. He testified that he had complained to the police chief about D.P. harassing him in the parking lot of his office, stating, "So if you're trying to somehow shade it that I lied to the chief, I did not. I did not lie to a public official." But when the prosecutor asked, "You lied in front of a public official while you were making a complaint to that public official?" Noble replied, "Fair enough." The court denied Noble's petition to seal the record, noting that Noble had admitted to lying to the police and that the statute of limitations for the dismissed charges had not elapsed. The court also expressed concern that sealing the record might impede the board's ability to fulfill its obligations.

**{¶ 20}** Noble stipulated and the board found that this conduct violated Prof.Cond.R. 3.3(a) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We adopt these findings of misconduct and also find that Noble's threats to report D.P.'s conduct to his employer and his repeated lies about his relationship with Doe in the context of the police investigation and the hearing on his petition to seal the record in his criminal case were sufficiently egregious to warrant the separate finding that he had violated Prof.Cond.R. 8.4(h).

**Sanction**

**{¶ 21}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 22}** The parties stipulated and the board found that three aggravating factors are present in this case—Noble acted with a dishonest or selfish motive, engaged in a pattern of misconduct, and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(2), (3), and (4). As for mitigating factors, the board found that Noble has a clean disciplinary record, cooperated in the disciplinary process, and presented evidence of his good character or reputation. *See* Gov.Bar R. V(13)(C)(1), (4), and (5). The board noted that Noble had presented positive character letters from people who had known him for many years, including two sitting judges, a retired judge, a magistrate, a court mediator, and two attorneys—all of whom were aware of the charges against him.

**{¶ 23}** The board also found that Noble's testimony and demeanor at the disciplinary hearing demonstrated that he has accepted responsibility and is genuinely remorseful for his misconduct. Noble acknowledged that lawyers are held to a higher standard of conduct than the general public and that he failed to hold himself to that standard while making "a lot of really, really bad decisions." He admitted that he had been dishonest with Doe, D.P. and D.P.'s counsel, the police chief, his ex-wife, and the judge who presided over the hearing on his petition to seal the criminal charges against him. He stated that he had apologized to several of those people in person, and during his disciplinary hearing, he expressed deep regret to those he had not seen face-to-face. In his apology to the legal community, Noble stated that his conduct was horrible and disgraceful and that he wished he had had the wherewithal to step back, take a look at what he was doing, and put a stop to it.

**{¶ 24}** Ultimately, Noble recognized that if he had been truthful with his ex-wife about his relationship with Doe, the matters with the police department and D.P. would not have progressed as they did. He also presented evidence in the form of a written report from a licensed, independent social worker from whom he had begun to receive counseling. The report stated that Noble had made significant progress in his course of therapy, had developed insight into the patterns in his thinking and emotions, and had started to develop healthier coping strategies. Noble testified that he has a strong support system that includes his mother, his stepfather, and a large extended family. He stated that during the pendency of this disciplinary proceeding, he reconciled with his father—from whom he had been estranged for several years—and that they now have breakfast together every Saturday. He further explained that he is being mentored by the senior partner in his law firm and that he has received additional support and good advice from some members of the Portage County judiciary.

**{¶ 25}** The parties jointly recommended that Noble be suspended from the practice of law for one year with six months stayed on the conditions that he commit no further misconduct and continue to participate in mental-health counseling for the duration of his suspension at a frequency to be determined by his counselor or another qualified healthcare professional. The board noted that the two principal cases cited by the parties in support of that sanction are *Disciplinary Counsel v. Benbow*, 153 Ohio St.3d 350, 2018-Ohio-2705, 106 N.E.3d 57, and *Akron Bar Assn. v. Williams*, 104 Ohio St.3d 317, 2004-Ohio-6588, 819 N.E.2d 667.

**{¶ 26}** Like Noble, Benbow engaged in an inappropriate sexual relationship with a client and compounded his misconduct by engaging in a series of denials to conceal his unethical conduct. In addition to exchanging text messages, Facebook messages, and photographs of a sexual nature with the client, Benbow was caught on a live-video feed engaging in sexual conduct with his client at the courthouse as they waited for the magistrate to complete final orders in the client's case. After

Benbow learned that the local sheriff's office had initiated an investigation into the incident at the courthouse, Benbow reported portions of his conduct to the local bar association—but he misrepresented the extent of his relationship with the client and denied that he had engaged in any misconduct. Benbow did not cooperate with the relator's investigation and affirmatively misrepresented and omitted facts when deposed. We suspended Benbow from the practice of law for two years, with the second year stayed on conditions.

{¶ 27} In *Williams*, we imposed a two-year suspension with 18 months conditionally stayed on an attorney who had engaged in a brief sexual relationship with a vulnerable domestic-relations client and then denied the relationship under oath during his deposition. In recommending that sanction, the board noted that Williams had exploited his client's emotional and financial weaknesses and had "placed his credibility against his client's integrity and steadfastly denied their sexual relationship under oath." *Id*. at ¶ 9.

{¶ 28} Here, the board found that Noble had engaged in a pattern of dishonest conduct by lying to multiple people, including a judge, in his efforts to conceal his sexual relationship with Doe. Moreover, his lies resulted in a formal investigation into D.P.'s conduct, which could have jeopardized D.P.'s career in law enforcement. In contrast to Benbow and Williams, however, Noble did not attempt to mislead relator during its investigation into his misconduct. Nor did he attempt to discredit his client as Williams did. Therefore, the board found that Noble's dishonest conduct warranted an actual suspension from the practice of law but that it warranted a lesser sanction than those we imposed in *Benbow* and *Williams*.

{¶ 29} The board also considered *Disciplinary Counsel v. Leon*, 155 Ohio St.3d 582, 2018-Ohio-5090, 122 N.E.3d 1242. Leon was hired by a husband and wife to pursue bankruptcy, but he never filed their petition. Consequently, the couple's creditors filed collection actions against them and foreclosed on their

home. During the representation, Leon also engaged in sexual activity with the wife. Although he withdrew from the representation when confronted by the husband, he did not refund the couple's retainer or filing fee. We found that Leon had acted with a dishonest or selfish motive, had committed multiple offenses, and had harmed vulnerable clients. But like Noble, he had no prior disciplinary record, fully cooperated in the disciplinary proceedings, and submitted evidence of his good character and reputation. We suspended Leon for one year with the final six months conditionally stayed.

{¶ 30} Lastly, the board considered *Disciplinary Counsel v. Spinazze*, 159 Ohio St.3d 187, 2020-Ohio-957, 149 N.E.3d 503. Spinazze, a part-time assistant city prosecutor, offered a plea to a defendant in a criminal matter. But when confronted by the judge presiding over the case, Spinazze misrepresented his reasons for offering the plea and falsely stated that the arresting officers had consented to the agreement. Based on those representations, the judge accepted the plea. Like Noble, Spinazze made a series of false statements to cover up his misconduct, though he finally admitted his misconduct when his supervisor confronted him about the arresting officer's objection to the plea. We suspended Spinazze from the practice of law for six months with no stay.

{¶ 31} In this case, the board determined that Noble's dishonest conduct, combined with his inappropriate sexual relationship with Doe, warranted a sanction greater than the six-month suspension we imposed in *Spinazze* but less than the two-year partially stayed suspensions we imposed in *Benbow* and *Williams*. In light of Noble's full cooperation with relator's investigation, his forthright testimony at his disciplinary hearing, his genuine remorse, and his acceptance of full responsibility for his misconduct, the board recommended that we adopt the parties' jointly recommended sanction of a one-year suspension with six months stayed on conditions.

{¶ 32} After independently reviewing the record and our precedent, we agree that the board's recommended sanction is the appropriate sanction for Noble's misconduct.

**Conclusion**

{¶ 33} Accordingly, Michael Allen Noble is suspended from the practice of law in Ohio for one year with six months stayed on the conditions that he (1) commit no further misconduct and (2) continue to participate in mental-health counseling throughout his suspension at a frequency to be determined by his counselor or another qualified healthcare professional. If Noble fails to comply with any condition of the stay, the stay will be lifted and he will serve the entire one-year suspension. Costs are taxed to Noble.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, for relator.

Coughlan Law Firm, L.L.C., and Jonathan E. Coughlan, for respondent.

_____