[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Cox*, **Slip Opinion No. 2022-Ohio-784.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-784

DISCIPLINARY COUNSEL *v*. COX.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Cox*, Slip Opinion No. 2022-Ohio-784.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, namely, engaging in sexual activity with a client in the absence of a preexisting consensual sexual relationship, knowingly making a false statement of material fact in connection with a disciplinary hearing, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Two-year suspension with the second year stayed on conditions.*

(No. 2021-0975—Submitted December 7, 2021—Decided March 22, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-073.

_____

**Per Curiam.**

{¶ 1} Respondent, Kevin Christopher Cox, of Coshocton, Ohio, Attorney Registration No. 0074018, was admitted to the practice of law in Ohio in 2001. In

a December 2020 complaint, relator, disciplinary counsel, alleged that Cox had committed several ethical violations by engaging in inappropriate sexual communications and a physical sexual relationship with a client and then lying about that conduct during the ensuing disciplinary investigation.

{¶ 2} The matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. After that hearing, the panel issued a report finding that Cox had committed the charged misconduct. Citing Cox's lack of candor throughout the disciplinary proceedings, the panel recommended that he be suspended from the practice of law for two years, with the second year stayed on conditions. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 3} Cox objects, arguing that the board's findings that he engaged in a physical sexual relationship with a client and then lied about it are against the manifest weight of the evidence. He argues that a public reprimand coupled with continuing-legal-education ("CLE") requirements is the appropriate sanction for sending inappropriate text messages to his client. After a thorough review of the record and our precedents, we overrule Cox's objections and adopt the board's findings of misconduct and recommended sanction.

**Findings of Misconduct**

{¶ 4} In November 2017, Cox was employed by McCleery Law Firm, L.L.C., in Coshocton and had been recently assigned to represent V.W. in her divorce. Cox understood that V.W. was to be treated with care because she was the firm's most important client, given the fees her case would generate.

{¶ 5} Cox represented V.W. until February 2019, when he withdrew from her case. The McCleery firm continued to represent V.W. In November 2019, V.W. disclosed to the firm that she had engaged in a sexual relationship with Cox—though she had denied having an "affair" with him when she testified in her divorce hearing. After V.W.'s divorce became final in January 2020, Gregory McCleery,

the principal of the McCleery firm, asked V.W. to provide corroborating evidence regarding her alleged sexual relationship with Cox. She gave McCleery copies of several text messages and emails that she had exchanged with Cox. McCleery later filed a grievance with relator, reporting Cox's alleged misconduct.

{¶ 6} At Cox's disciplinary hearing, V.W. described herself as vulnerable and emotionally weakened by the stress of her marital breakup. She testified that shortly after Cox began representing her, they began a consensual sexual relationship that lasted for more than a year. She stated that she and Cox typically met at her home to have sex.

{¶ 7} V.W. testified at the disciplinary hearing that the relationship deteriorated in February 2019 when she realized that, despite her understanding that Cox was separated, he was still living with his wife. V.W. also addressed her divorce-hearing testimony, in which she had denied having an affair with Cox, explaining that she did not equate having sex with Cox to an affair because she had already separated from her husband and felt that she had no moral or legal obligations to him. She further testified that if she had been asked during the divorce hearing if she and Cox were having sex, she would have answered, "Yes."

{¶ 8} Cox initially denied having engaged in any misconduct. At his disciplinary hearing, however, Cox acknowledged sending "wildly inappropriate" sexual text messages and emails to V.W. in early November 2017. But he maintained that he had never engaged in a physical sexual relationship with her. Cox emphasized the disparity between V.W.'s divorce-hearing testimony, in which she had denied having an affair with him, and her disciplinary-hearing testimony, in which she had reported having a physical sexual relationship with him. He urged the panel to accept that disparity as compelling evidence of V.W.'s lack of veracity. But the panel's findings show that it was more troubled by Cox's dishonesty throughout the disciplinary process.

**{¶ 9}** First, the panel found that Cox was untruthful in his May 2020 response to relator's letter of inquiry when he denied the existence of *any* inappropriate sexual relationship with V.W. and omitted any reference to his text messages and emails with her. In his testimony to the panel, Cox claimed that he had responded only to the content of McCleery's grievance, which did not include copies of the offending text messages and emails, and that he had not had the opportunity to review the text messages or emails. But the panel found that testimony to be untruthful because Cox acknowledged at the hearing that McCleery had shown him (but not allowed him to keep copies of) some of those messages when McCleery first confronted him with the situation in February 2020.

**{¶ 10}** Second, the panel found that Cox "was not truthful in his deposition testimony and was dishonest in his efforts to sanitize that record through corrections on the related errata sheet." During his November 2020 deposition, Cox testified that he did not recall sending the text messages to V.W., and he answered, "No," when asked whether it was "possible" that he had sent them. After reviewing the deposition transcript, Cox completed an errata sheet changing his answer to that question from "no" to "yes." He further noted on the errata sheet: "I now believe the text messages came from my phone. While I do not remember these specific text messages, my Verizon records show they came from my phone/my phone number." The panel found that Cox's explanation for that change was devoid of credibility because the phone records that Cox claimed to have reviewed did not contain any text-message logs and did not identify the phone numbers associated with any text messages, the times or dates that text messages were sent, or the content of any text messages.

**{¶ 11}** Third, the panel found that Cox was dishonest about his use of an email address that bore his full name. During his deposition, Cox denied that the email address belonged to him and he denied using that account to exchange emails with V.W. At his disciplinary hearing, however, he acknowledged that it was

4

"possible" that he had sent emails to V.W. from that email address. Cox explained that he changed his testimony because he had acquired information that caused him to believe that his deposition testimony was inaccurate. That information consisted of records that relator had obtained from Google pursuant to a subpoena, linking Cox to the email address in question through subscriber information and an Internet-protocol address. Based on this testimony, the panel found that Cox "was willing to acknowledge only those acts Relator was able to prove through documents" and that Cox "dissembled whenever possible."

{¶ 12} The panel found that Cox's phone records corroborated V.W.'s testimony and proved that Cox did not testify truthfully at his disciplinary hearing. V.W. testified that on the night of November 3, 2017, Cox went to her home and engaged in sexual intercourse with her. Cox's phone records establish that he placed a call to his wife at 10:00 p.m. that night from the small town where V.W.'s home is located. At 11:23 p.m., he called V.W. At 11:27 p.m., V.W. sent an email to Cox stating, "I miss you already!" At 9:04 a.m. the next morning, Cox responded, "I feel the same way. I hope you have a great day today. I am dragging lol." At 9:17 a.m., V.W. sent him another email stating, "You were absolutely worth every second WOW! I can rewatch the garage episode on my security camera. I was definitely surprised/excited to see you." Yet Cox denied that he had had any sexual relationship with V.W.

{¶ 13} On these facts, the panel found that V.W.'s disciplinary-hearing testimony, notwithstanding the apparent inconsistency with her divorce-hearing testimony, was "far more credible" than Cox's testimony. Relying on that testimony and the other evidence adduced at the hearing, the panel found that Cox had violated Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the client-lawyer relationship) by sending inappropriate text messages to V.W. and engaging in a sexual relationship with V.W. that did not predate the attorney-

client relationship. The panel found he had also violated Prof.Cond.R. 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) by making false statements of material fact in his response to relator's letter of inquiry, in his deposition testimony and corrections thereto, and in his testimony to the panel. The board adopted these findings of fact and misconduct.

**Cox's Objections to the Board's Findings of Fact and Misconduct**

{¶ 14} In his first two objections to the board's report and recommendation, Cox contends that the board's findings that he engaged in a physical sexual relationship with V.W. and that he intentionally lied about that relationship are against the manifest weight of the evidence. In these objections, Cox acknowledges that the board's findings of fact and misconduct necessarily turn on the credibility of his own testimony and that of V.W.

{¶ 15} Cox offers several reasons that the board should have found V.W.'s testimony less credible than his own. Cox renews his argument that V.W.'s disciplinary-hearing testimony was not credible because she had previously denied under oath having an affair with him yet she later contacted his ex-wife and confessed to having had "an affair" with Cox while he was still married. He also asserts that V.W. suffered from dementia when she reported to McCleery that she and Cox had had a sexual relationship. Cox notes that although V.W. claimed that there was a "sex tape" that documented their alleged physical sexual relationship, she never produced a copy of that video. He also contends that relator's failure to procure the testimony of two of V.W.'s friends—one of whom had purportedly viewed a portion of the "sex tape" and another in whom V.W. claims to have confided—suggests that they could not corroborate V.W.'s "story."

{¶ 16} On the other hand, Cox argues that he was truthful during his deposition when he denied having any recollection of the alleged "sexting,"

6

because he had no reason to recall those communications more than two years after they occurred. He maintains that after further investigation led him to conclude that he had "probably written the improper sexting messages," he exercised his right to file an errata sheet to correct his testimony. For the reasons that follow, we find that these arguments are without merit.

{¶ 17} In attorney-discipline matters, the relator must prove by clear and convincing evidence the facts necessary to establish an ethical violation. *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 708 N.E.2d 193 (1999), paragraph two of the syllabus. Clear and convincing evidence is an intermediate measure of proof that requires evidence sufficient to produce in the mind of the trier of facts " 'a firm belief or conviction as to the facts sought to be established.' " *Id.* at 331, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 18} "[I]t is of no consequence that the board's findings of fact are in contravention of respondent's or any other witness's testimony. 'Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.' " *Disciplinary Counsel v. Zingarelli*, 89 Ohio St.3d 210, 217, 729 N.E.2d 1167 (2000), quoting *Cross* at 478. "Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

{¶ 19} During Cox's disciplinary hearing, V.W. testified that she had sexual intercourse with Cox "within weeks" of meeting him. She stated that on the evening of November 3, 2017, Cox came to her home and began "making out" with her in the garage (which had a security camera) before moving to the living room (which did not have a security camera) where they engaged in sexual intercourse. It was later that night and the next morning that the exchange of emails and text

messages summarized in the board's findings occurred. The records of those communications place Cox in V.W.'s town and establish that the two of them were together that night and that they missed each other after parting. Moreover, V.W.'s email stating, "You were absolutely worth every second WOW! I can rewatch the garage episode on my security camera. I was definitely surprised/excited to see you," corroborates V.W.'s testimony that they had engaged in some form of physical contact of a sexual nature.

{¶ 20} In another exchange of text messages, V.W. asked Cox if he was on his way to her house yet and Cox responded, "Well now I'm thinking of you naked and I've forgotten my name * * * well, that and my mouth and tongue running over every inch of your body." (Ellipses sic.) V.W. estimated that they had had sex 50 to 100 times between November 2017 and February 2019.

{¶ 21} The record demonstrates that the hearing panel was well aware of V.W.'s prior testimony in which she had denied having an "affair" with Cox and of the text message that she later sent to Cox's ex-wife confessing to having had "an affair" with him when he was still married. However, the panel accepted V.W.'s explanation for the apparent inconsistency between her disciplinary-hearing testimony and her divorce-hearing testimony and found her to be "far more credible" than Cox. Indeed, the panel stated:

> [V.W.] conveyed a sense of forthrightness and candor about the entire relationship with [Cox], under circumstances that were at the least embarrassing. She evinced no feeling of bitterness or anger towards [Cox] and in fact made it clear that she was concerned about the impact of the proceedings on his career. Her attitude served to increase her credibility.

{¶ 22} Despite Cox's arguments to the contrary, the record does not weigh heavily against the board's determination that V.W.'s testimony was more credible than his own. Although Cox suggests that V.W.'s memory of these events was faulty because she suffered from dementia, on cross-examination V.W. expressly denied that she had ever been diagnosed with that condition, though she admitted that she had been treated for a medical condition that caused her to be forgetful. V.W. also offered a plausible explanation for her failure to produce the "sex tape," testifying that her security system records over previous footage every 30 days. Nor does relator's failure to call V.W.'s friends as corroborating witnesses render V.W.'s testimony any less credible.

{¶ 23} Two former employees of the McCleery firm testified that they did not believe *V.W.* was an honest or trustworthy person; those witnesses also described *Cox* as "honest," "truthful," "trustworthy," and "believable." Although their testimonies do not comport with the panel's own assessment of Cox's credibility, the record does not weigh heavily against the panel's assessment in this regard.

{¶ 24} Indeed, it is not entirely clear from the record that Cox has ever unequivocally admitted that he wrote or sent the offending text messages to V.W. In his deposition errata sheet, he changed his original answer in which he had denied writing one of the sexually suggestive text messages to reflect that he did write the message. But the remainder of Cox's corrections to that testimony conveyed only his newfound belief that the text messages "came from [his] phone."

{¶ 25} Then, at his disciplinary hearing, Cox testified that he was "entirely responsible" for the text messages and other sexual communications with V.W. and that his conduct "was violative of the professional rules of conduct," but he maintained that he did not remember engaging in those communications. Cox occasionally stated that he did not dispute that the text messages were from him. However, more often than not he equivocated, stating that he could not say "for

sure" that he had sent the text messages in question but that he "probably" had sent them and that he fully recognized that those text messages were "likely" his.

{¶ 26} One panel member confronted Cox about his credibility at the disciplinary hearing, stating, "Just to be frank, I have to tell you that I find it difficult to believe that a lawyer representing the firm's most important client would not remember sending those texts and e-mails." The panel member then instructed Cox: "Tell me why you think you are unable to remember that, even to this day, as I understand your testimony." In response, Cox offered that V.W. was "a very friendly and jovial person," that they "got along very well," and that they "instantly had a banter that went back and forth." While Cox claimed that their banter had started "innocently enough" and that it "certainly slid into an inappropriate area," he maintained that he "was not specifically looking [for] or trying to have a physical relationship with [her]." He offered little explanation for his inability to remember those communications, other than to state that "it was kind of a throwaway" and that "it wasn't widespread." And at no time did he ever acknowledge that he had engaged in any physical sexual contact with V.W.

{¶ 27} Ultimately, the panel was in the best position to assess the credibility of each of the witnesses, and the record does not weigh heavily against those findings. Furthermore, we find that the evidence clearly and convincingly demonstrates that Cox's inappropriate sexual relationship with V.W. involved a physical component, as well as sexually charged communications by text message and email, and that Cox lied about both aspects of that relationship throughout this disciplinary proceeding. We therefore overrule Cox's first two objections and adopt the board's findings of misconduct.

**Recommended Sanction**

{¶ 28} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the

aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 29} The board found the presence of seven aggravating factors here: Cox (1) acted with a dishonest or selfish motive, (2) engaged in a pattern of misconduct, (3) committed multiple offenses, (4) failed to cooperate in the disciplinary process, (5) submitted false evidence, made false statements, or engaged in other deceptive practices during the disciplinary process, (6) refused to acknowledge the wrongful nature of his conduct, and (7) caused harm to a vulnerable client. *See* Gov.Bar R. V(13)(B)(2) through (8).

{¶ 30} As for mitigating factors, the board found that Cox has no prior discipline and presented evidence of his good character or reputation. *See* Gov.Bar R. V(13)(C)(1) and (5).

{¶ 31} In determining the appropriate sanction for Cox's misconduct, the board considered three cases in which we imposed sanctions ranging from a six-month fully stayed suspension to a two-year suspension with the second year conditionally stayed. The board recommends that we suspend Cox from the practice of law for two years and that we stay the second year of that suspension on the conditions that he commit no further misconduct, complete six hours of CLE focused on appropriate behavior and boundaries with clients in addition to the requirements of Gov.Bar R. X, and pay the costs of this proceeding.

### Cox's Objections to the Board's Recommended Sanction

{¶ 32} Cox objects to the board's recommended sanction and argues that his misconduct, which he describes as "improper sexual banter" with a client, warrants a sanction no greater than a public reprimand coupled with a requirement that he complete 6 to 12 hours of CLE and, perhaps, a period of monitored probation. In support of that proposed sanction, Cox maintains that he has been truthful throughout this disciplinary proceeding and that he should be credited for his cooperation and sincere remorse for his misconduct.

**{¶ 33}** However, Cox's cooperation in this proceeding has been minimal and pales in comparison to the pattern of dishonesty, misrepresentation, and dissembling that he has exhibited throughout this case. His purported acceptance of responsibility and professed remorse for his sexually charged communications ring hollow when balanced against his repeated efforts to cast responsibility for the transmission of those sexually charged communications upon an unidentified scapegoat—admitting that the communications came from his phone and email address but being unable to recall having written or sent *any* of those messages himself. Even in his objections Cox attempts to have it both ways. He denies that he ever had any physical sexual contact with V.W. while inexplicably claiming that "[a]ny sexual activity that occurred between VW and [himself] was, factually—but not legally—consensual, and welcomed by VW." In short, Cox has not cooperated in this disciplinary proceeding, has not accepted responsibility for his misconduct, and has not expressed genuine remorse for his actions.

**{¶ 34}** The board found that the facts of this case most closely align with the facts of *Disciplinary Counsel v. Benbow*, 153 Ohio St.3d 350, 2018-Ohio-2705, 106 N.E.3d 57. Benbow exchanged electronic messages of a sexual nature with one of his clients and they were caught on video engaging in sexual conduct in a courthouse conference room. Although Benbow reported some of those events to a local bar association, he misrepresented the extent of his relationship with the client and the nature of their conduct at the courthouse. Like Cox, Benbow omitted relevant information and affirmatively misrepresented facts when deposed by the relator, then submitted an errata sheet purporting to clarify his testimony. He also gave evasive and argumentative testimony during his disciplinary hearing.

**{¶ 35}** Unlike Cox, Benbow was found to have engaged in conduct that was prejudicial to the administration of justice. Benbow ultimately stipulated to four of the five charged rule violations—including the same three rules that Cox violated.

Furthermore, Benbow agreed that his misconduct warranted a two-year suspension with the second year conditionally stayed.

**{¶ 36}** "We have held that an attorney who engages in a course of conduct that involves dishonesty, fraud, deceit, or misrepresentation must serve an actual suspension from the practice of law for an appropriate period of time." *Id*. at ¶ 19, citing *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. In this case, we believe that a two-year suspension with the second year stayed on the conditions recommended by the board will serve to protect the public from future harm, to impress upon Cox the seriousness of his misconduct, and to educate him so that it does not happen again.

**{¶ 37}** Based on the foregoing, we overrule Cox's final objection and adopt the board's recommended sanction.

### Conclusion

**{¶ 38}** Accordingly, Kevin Christopher Cox is suspended from the practice of law in Ohio for two years with the second year stayed on the conditions that he commit no further misconduct, complete six hours of CLE focused on appropriate behavior and boundaries with clients in addition to the requirements of Gov.Bar R. X, and pay the costs of these proceedings. If Cox fails to comply with any condition of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Cox.

Judgment accordingly.

O'CONNOR, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., concurs in judgment only.

———————————

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle A. Hall, Assistant Disciplinary Counsel, for relator.

Mann Dulaney, L.L.C., and William Mann, for respondent.

_____