**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Russ,* **Slip Opinion No. 2023-Ohio-1337.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1337

DISCIPLINARY COUNSEL *v*. RUSS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Russ,* Slip Opinion No. 2023-Ohio-1337.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with one year conditionally stayed.*

(No. 2022-1512—Submitted February 7, 2023—Decided April 27, 2023.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-015.

_____

**Per Curiam.**

{¶ 1} Respondent, Andrew Edward Russ, of Lancaster, Ohio, Attorney Registration No. 0074974, was admitted to the practice of law in Ohio in 2002.[1]

{¶ 2} In a two-count amended complaint, relator, disciplinary counsel, alleged that Russ violated four professional-conduct rules by making sexual overtures toward a vulnerable client and arriving late or failing to attend hearings

_____

1. Russ is also licensed to practice law in Florida.

on behalf of ten other clients. The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors and submitted 72 stipulated exhibits. Russ and one other witness testified at a hearing before a three-member panel of the Board of Professional Conduct. After the hearing, the panel issued a report finding that Russ committed the charged misconduct and recommending that he be suspended from the practice of law for two years, with one year conditionally stayed, and that we place certain conditions on his reinstatement to the profession. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No objections have been filed.

{¶ 3} For the reasons that follow, we adopt the board's findings of misconduct and the recommended sanction.

## MISCONDUCT

### Count One: Soliciting a Sexual Relationship with a Client

{¶ 4} In June 2021, the Muskingum County Court of Common Pleas, Juvenile Division, appointed Russ to represent C.L. against allegations that her newborn daughter, K.P., was an abused, neglected, or dependent child. Russ did not know C.L. or have a sexual relationship with her before that appointment. C.L. was a vulnerable client in that (1) she was a young mother facing the possibility of losing custody of her child, who had tested positive for the presence of fentanyl at birth, (2) she had a mental disorder, and (3) she did not have the support of her parents.

{¶ 5} After Russ was appointed to represent C.L., he began communicating with her by text message. He offered C.L. a job working in his law office and encouraged her to confide in him. After learning that she had issues with her family (particularly her father), he offered to serve as a father figure, adding that he wanted to help give her stability and build her self-esteem, confidence, and independence. He also texted her that he would treat her the way she should be treated.

2

**{¶ 6}** Intermingled with those offers of help, support, and encouragement were Russ's express solicitations of a sexual relationship with C.L. Russ texted C.L. that he "want[ed]" her and that he was "interested in a relationship" with her. Over the course of several days, Russ's solicitations became more overt. After Russ texted C.L., "I think we have that Daddy/daughter dynamic goin' on," he suggested that he could spend considerable time with her and stated that he was "sexually attracted" to her.

**{¶ 7}** Russ's texts soon escalated with comments like, "[B]tw you have a nice body," followed immediately by "[C]an't wait to get my hands all over it." Later, he texted C.L. that he wanted her to "be [his] woman," then added, "I want your p* * *y little girl" and "Show me a little of what's mine." Russ confessed to C.L. that he had always wanted a young girlfriend about the age of his daughter with whom he could share "the Daddy/daughter dynamic in and out of the bedroom," and he suggested that treating C.L. as a "girlfriend/daughter" was "a big turn on for [him] sexually."

**{¶ 8}** Even before Russ's overt sexual advances had begun, C.L. became uncomfortable with his messages and texted her daughter's father, "My attorney is a creep. And I'm stuck with him * * *." She later disclosed Russ's inappropriate sexual solicitations to the guardian ad litem ("GAL") assigned to her case. Based on that information, the GAL filed a grievance with relator.

**{¶ 9}** Relator sent Russ a letter of inquiry requesting his written response to allegations that he had improperly solicited a sexual relationship with C.L. After learning that the GAL had filed a grievance against him and that relator had attempted to speak with C.L. but before he received relator's letter of inquiry, Russ texted and called C.L. to ascertain whether she intended to tell relator the truth about their communications. Believing that C.L. would not disclose his inappropriate communications to relator, Russ denied the allegations set forth in relator's letter of inquiry. In addition, he suggested that C.L. had misled an

"inexperience[d]" GAL in an attempt to gain leverage in her case, to gain favor with the GAL, or to blame Russ for failing to obtain a favorable result in her case.

{¶ 10} When Russ was deposed by relator, he discovered that relator had obtained copies of the text messages he had exchanged with C.L. At that time, he acknowledged that he had sent the text messages described above and that they were intended to solicit a sexual relationship with C.L., though no physical sexual activity ever occurred. Despite that acknowledgment, throughout his deposition, Russ continued to claim that C.L. had initiated the inappropriate communications in an attempt to blackmail or "get leverage" on him and he suggested that she was known for engaging in that type of conduct.

{¶ 11} During his disciplinary hearing, Russ acknowledged that he had no intention of admitting that he had sent the text messages to C.L. until he realized at his deposition that relator already had copies of the messages. He also admitted that his statements in response to relator's letter of inquiry were false and that he had made them in an attempt to shift blame away from himself and onto C.L. At his disciplinary hearing, Russ acknowledged that he had wanted to hire C.L., capitalized on her poor relationship with her family, and attempted to boost her self-esteem in an effort to earn her trust and further his efforts to engage in a sexual relationship with her.

{¶ 12} Russ stipulated and the board found that his conduct violated Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the client-lawyer relationship), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice). The board expressly found that Russ's conduct toward C.L. was sufficiently egregious to merit finding a separate violation of

Prof.Cond.R. 8.4(h).  *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.  We adopt these findings of misconduct.

**Count Two: Tardiness and Failure to Appear**

{¶ 13} Russ stipulated that between August 2021 and April 2022, he was 15 to 60 minutes late for six hearings and failed to appear at four others and that all of the hearings would have proceeded in a timely manner but for his delay or absence.  He did not offer a valid excuse for that misconduct.  As a result of Russ's repeated tardiness and his failures to appear at hearings, he was removed from the list of attorneys eligible to serve as court-appointed counsel in the Licking County Court of Common Pleas, Probate-Juvenile Division.

{¶ 14} The parties stipulated and the board found that Russ's conduct violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).  We adopt this finding of misconduct.

**RECOMMENDED SANCTION**

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} The parties stipulated and the board found that five aggravating factors are present in this case: Russ acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, submitted false statements during the disciplinary process, and harmed a vulnerable client.  *See* Gov.Bar R. V(13)(B)(2), (3), (4), (6), and (8).  As for mitigating factors, the parties stipulated and the board agreed that Russ had a clean disciplinary record, that he had made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings once confronted with the evidence against him, and that other penalties or sanctions had been imposed for his misconduct—namely, removal of his name from the list of attorneys eligible to serve as court-

appointed counsel. Gov.Bar R. V(13)(C)(1), (4), and (6). The board found that Russ was genuinely remorseful for his misconduct and that he had not attempted to minimize his misconduct during his testimony at his disciplinary hearing. Although Russ presented evidence that he had submitted to a psychological assessment, begun counseling, and entered into a two-year contract with the Ohio Lawyers Assistance Program ("OLAP") after the disciplinary complaint was filed against him, he did not seek to establish any diagnosed mental disorder as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7). Nonetheless, the board commended Russ for taking those affirmative steps before being ordered to do so.

{¶ 17} Relator recommended that Russ be suspended from the practice of law for two years with one year stayed on conditions that would require him to continue receiving treatment and counseling provided by a professional approved by OLAP and to refuse all court appointments involving female or juvenile clients until his treating medical professional cleared him to undertake such representation.

{¶ 18} In support of that recommended sanction, relator cited two cases in which we suspended attorneys from the practice of law for one year for engaging in misconduct comparable to Russ's solicitation of a sexual relationship with C.L. *See Lake Cty. Bar Assn. v. Mismas*, 139 Ohio St.3d 346, 2014-Ohio-2483, 11 N.E.3d 1180 (imposing a one-year suspension, with six months conditionally stayed, on an attorney who violated Prof.Cond.R. 8.4(h) by sending explicit text messages to a law-student employee and demanding sexual favors as a condition of her employment); *Disciplinary Counsel v. Detweiler*, 135 Ohio St.3d 447, 2013-Ohio-1747, 989 N.E.2d 41 (imposing a one-year suspension on an attorney who made repeated unsolicited and unwelcome sexual advances toward a vulnerable client through text messages that included a nude photograph of himself in a state of sexual arousal).

{¶ 19} But the board observed that in addition to the type of sexual advances at issue in *Mismas* and *Detweiler*, Russ had committed other rule violations through

his submission of false statements during the disciplinary process and his tardiness at and failure to attend scheduled hearings on behalf of his clients. Consequently, the board considered four other cases in which we imposed partially stayed two-year suspensions on attorneys who had engaged in sexual relationships with vulnerable clients and also had committed significant acts of dishonesty. *See Disciplinary Counsel v. Benbow*, 153 Ohio St.3d 350, 2018-Ohio-2705, 106 N.E.3d 57 (imposing a two-year suspension, with one year conditionally stayed, on an attorney who had exchanged inappropriate sexual communications with a client, engaged in sexual conduct with the client in a courthouse conference room, and misrepresented the extent of his relationship and conduct with the client in the disciplinary process); *Disciplinary Counsel v. Cox*, 168 Ohio St.3d 78, 2022-Ohio-784, 195 N.E.3d 1018 (imposing a two-year suspension, with one year conditionally stayed, on an attorney who engaged in inappropriate sexual communications and a sexual relationship with a client and then lied about that conduct during the disciplinary investigation); *Disciplinary Counsel v. Porter*, 166 Ohio St.3d 117, 2021-Ohio-4352, 182 N.E.3d 1188 (imposing a two-year suspension, with one year conditionally stayed, on an attorney who engaged in improper sexual relationships with two clients, filed a fraudulent affidavit in court, and made false statements of material fact in the resulting disciplinary investigation); *Disciplinary Counsel v. Sarver*, 155 Ohio St.3d 100, 2018-Ohio-4717, 119 N.E.3d 405 (imposing a two-year suspension, with 18 months conditionally stayed, on an attorney who engaged in a sexual relationship with a client, lied to the judge about the nature of his relationship with the client, and obstructed official business by instructing the client to take action to avoid being tracked by law-enforcement officers).

{¶ 20} The board declined to distinguish the facts of Russ's misconduct from *Benbow*, *Cox*, *Porter*, and *Sarver* on the ground that Russ's conduct had not culminated in a physical sexual relationship with his client, because "Prof.Cond.R.

1.8(j) does not differentiate between soliciting sex and having sex with a client where no personal relationship preexisted the attorney-client relationship." Furthermore, the board concluded that "there is little question that soliciting sex from a vulnerable client can be harmful to the client, even where there is no physical sexual contact." We agree that there is an "inherent harm that results when an attorney abuses the attorney-client relationship in pursuit of the attorney's own sexual gratification," *Sarver* at ¶ 31. And in this case, we find that the harm to C.L. was magnified by Russ's efforts to exploit her weaknesses to satisfy his own sexual desires.

{¶ 21} Expressing a belief that Russ requires professional intervention to ensure that he is capable of returning to the ethical practice of law, the board recommends that we suspend him for two years, with one year conditionally stayed, and that we impose certain conditions on his reinstatement to protect the public from future harm. Specifically, the board recommends that Russ's reinstatement be conditioned on the submission of proof that he has complied with his July 20, 2022 OLAP contract and any extension thereof and completed three hours of continuing legal education focused on professionalism in addition to the requirements of Gov.Bar R. X. In addition, the board recommends that Russ be required to submit an opinion from a qualified healthcare professional stating that he is capable of returning to the competent, ethical, and professional practice of law and specifically addressing Russ's ability to work in a professional and ethical manner with female clients, both adult and juvenile. The board recommends that until the qualified healthcare professional opines that Russ is capable of professionally and ethically representing female clients, he be required to decline any court-appointed representation of female clients.

{¶ 22} After reviewing the record and our applicable precedent, we agree with the board's assessment that Russ's misconduct is more akin to that in *Benbow*, *Cox*, *Porter*, and *Sarver* than that in *Mismas* and *Detweiler*. Because Russ has

suggested that his sexually oriented misconduct may be rooted in longstanding psychological issues and because he had completed only eight treatment sessions at the time of his disciplinary hearing, we agree that a two-year suspension, with one year conditionally stayed, coupled with the recommended conditions on Russ's reinstatement, is necessary to protect the public from future harm.

## CONCLUSION

{¶ 23} Accordingly, Andrew Edward Russ is hereby suspended from the practice of law in Ohio for two years with one year stayed on the condition that he commit no further misconduct. If Russ fails to comply with the condition of the stay, the stay will be revoked and he will be required to serve the full two-year suspension. In addition to the requirements of Gov.Bar R. V(24), Russ's reinstatement shall be conditioned on the submission of (1) proof that Russ has complied with his July 20, 2022 OLAP contract and any recommended extension thereof, (2) proof that he has completed three hours of continuing legal education focused on professionalism in addition to the requirements of Gov.Bar R. X, and (3) an opinion from a qualified healthcare professional stating that Russ is capable of returning to the competent, ethical, and professional practice of law that specifically addresses his ability to work in a professional and ethical manner with female clients, both adult and juvenile. Unless and until a qualified healthcare professional opines that Russ is capable of professionally and ethically representing female clients, Russ shall be required to decline any court-appointed representation of female clients. Costs are taxed to Russ.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

———————————

Joseph M. Caligiuri, Disciplinary Counsel, and Kelli C. Schmidt and Matthew A. Kanai, Assistant Disciplinary Counsel, for relator.

Alvin Mathews, for respondent.

_____